Helen PITHA, Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.

No. 43636.

Supreme Court of Missouri.

Division No. 1.

Dec. 13, 1954.

Lloyd E. Boas and Lester Stephens, St. Louis, for appellant.

Moser, Marsalek, Carpenter, Cleary & Carter and Charles F. Hamilton, St. Louis, for respondent, Leland Jones, St. Louis, of counsel.

DALTON, Presiding Judge.

Action for $10,000 damages for personal injuries alleged to have been sustained on account of defendant's negligence. Verdict and judgment were for defendant, but the trial court set the same aside and ordered a new trial on account of errors assigned in Sections 7, 8, 12, and 20 of plaintiff's motion for a new trial. Defendant has appealed and contends that the court erred in granting the new trial.

About 8 p. m., January 2, 1952, plaintiff was driving a 1948 Chevrolet sedan eastwardly on Gravois Avenue in the City of St. Louis. A fine mist and rain was falling, the streets were wet, the automobile was in perfect condition and the windshield wipers were operating. Plaintiff was driving approximately 20 feet behind an eastbound bus. Both vehicles were traveling about the same speed, 20 to 25 miles per hour, nearer 25, as they proceeded down a slight decline. The bus was being operated so close to the center line of Gravois Avenue that plaintiff would not attempt to pass and plaintiff's automobile was slightly closer to the center line of the street. There was no traffic to plaintiff's right or left, but quite a bit of westbound traffic on the north side of the street. Defendant's bus driver had passed up a "long bus stop sign" at the intersection of Alma and Gravois, that is, he "didn't put in for it or anything," when one bus length east of the bus stop zone "all of a sudden" plaintiff saw the stoplights on the rear of the bus flash and the bus made a sudden distinct turn to the right and stopped. After the stoplights flashed, plaintiff "instantly applied" her brakes and swerved to the left but could not pass the bus to the right of the center line or "without crashing into westbound traffic." Her automobile struck the rear of the bus after the bus had come to a complete stop. The automobile was damaged and plaintiff

was thrown against the steering wheel and sustained personal injuries.

Plaintiff did not know whether her application of the brakes decreased the speed of her automobile prior to the crash, but the wheels did not slide. She did not know what time or distance would have been required to stop her automobile at the speed she was traveling, or under the existing conditions, but at a speed of approximately 25 miles per hour, she could have stopped in 20 feet, "if he hadn't stopped so suddenly." She said "the light went on and the brake; his brakes squeaked and he stopped * * As soon as I saw his light go on he stopped the bus," he stopped it "suddenly." She further said that, after she saw the lights flash, the bus moved "possibly a tiny bit, but not much." Other testimony indicated that the bus stopped almost instantly after the stoplights flashed. The bus was stopped with its left rear corner within 5 or 6 feet of the center line of the street, and so close that it would have been impossible for an automobile to drive to the left of the bus without crossing the center line. It will not be necessary to review other evidence, or that of defendant.

The petition contained numerous assignments of negligence but the cause was submitted upon the alleged negligence of the operator of the bus "in suddenly swerving and in bringing said bus to a sudden stop, as aforesaid, under the circumstances then and there existing"; and upon alleged negligence in stopping a vehicle in the street and not near the right-hand curb in violation of an ordinance of the City of St. Louis. On the issues presented here we need not determine whether the first submission of negligence was adequate absent any allegation or proof or required finding that no reasonable, adequate and timely warning was given. The instruction submitting the last assignment of negligence required a finding, in part, as follows: "* * * that the operator of said bus swerved it two or three feet toward the right and stopped it for the purpose of allowing passengers to board, and not for any emergency or to allow another vehicle or pedestrian to cross the path of said bus;

that when stopped, as aforesaid, said bus was angled across and in the two eastbound traffic lanes closest to the center of said street and was in the path of the automobile driven by the plaintiff; that when stopped, as aforesaid, no part of said bus was in the traffic lane closest to the south curb of said street, and the bus was not near the right-hand curb of said street; that when stopped, as aforesaid, it was likely that said bus would be collided with by the automobile being operated by plaintiff, and that said automobile did collide with said bus; and that the operator of said bus knew, or in the exercise of the highest degree of care could have known, of the presence of the automobile being operated eastwardly and to his rear and that by stopping said bus in the position aforesaid it was likely that said automobile would be caused to collide with said bus; then you are instructed that in stopping said bus, as aforesaid, the operator of said bus was negligent; * * *."

The petition further contained an assignment of negligence based upon an alleged failure of the operator of the bus, when slowing down and stopping, to "extend his arm in a horizontal position," as required by Section 25(e), Chapter 69, Revised Code of St. Louis, 1948. The petition also contained an assignment, "That defendant, by and through its agent in charge of said vehicle, negligently and carelessly, suddenly *and without warning,* checked the speed of said bus and brought same to a stop in the traveled portion of the street when defendant knew, or in the exercise of the highest degree of care should have known, that by so doing defendant would block plaintiff's path and cause the automobile plaintiff was operating to collide with said bus." (Italics ours).

In the course of the trial, after the evidence hereinbefore reviewed, was in the record, plaintiff was asked: "A. At any time, Mrs. Pitha, prior to the accident in question did the bus operator extend his hand out of the left window of the bus?" An objection (that the issue was entirely out of the case and immaterial in view of plaintiff's testimony concerning the opera-

tion of stoplights) was sustained. The question was never answered. No offer of proof was made and the court was not advised as to what plaintiff's testimony would have been. It appeared from subparagraph (h) of said section 25 of said Code, supra, that if the vehicle was equipped with a mechanical or electrical signalling device the arm signal was not required, and the court held that the provision as to arm signals was inapplicable under the facts in evidence. Thereafter, when plaintiff offered section 25(e) of Chapter 69 Revised Code of the City of St. Louis, 1948, the court sustained defendant's objection thereto as inapplicable. Compare Section 304.020, Subsections (8) and (11) RSMo 1949, V.A.M.S.

The trial court's action in sustaining the objection to the said question is the matter referred to in sections 7 and 8 of plaintiff's motion for a new trial, wherein it is contended "that the court erred in sustaining defendant's objection to *the question* put by the attorney for plaintiff to plaintiff asking whether or not she could have seen an arm signal made by the operator of the involved bus indicating his intention to stop"; and that "the court erred in sustaining defendant's objection to plaintiff's *offer of proof* to the effect that the operator of said bus did not make a hand or arm signal before bringing said bus to a sudden and abrupt halt in that portion of the street reserved for moving traffic." (Italics ours).

Respondent now concedes that no offer of proof was made on behalf of plaintiff, but nevertheless contends that it was reversible error for the trial court "to exclude evidence of the bus operator's failure to make a hand signal of his intention to stop"; that by denying plaintiff the right to show that the bus operator did not make an arm signal, the trial court made it impossible for her to prove that *"no timely warning was made"* (Italics ours); that she should have been "permitted to prove a lack of a timely warning as within the purview of 'without warning' which is the language of the petition"; and that she did not waive error by not offering an

instruction based upon *"improperly excluded evidence."* (Italics ours). Respondent further says that the two lights on the rear of the bus "were what is ordinarily called 'stop lights', * * * that on the occasion in question they lit up simultaneously with the effective application of the brakes"; that the stoplights light up when the brakes are applied and the bus begins to slow down; and that "since the stop was sudden, the operation of stoplights on the bus did not provide the timely warning required by law," citing Ritz v. Cousins Lumber Co., 227 Mo.App. 1167, 59 S.W.2d 1072, 1075; Christman v. Reichholdt, Mo.App., 150 S.W.2d 527, 530; Matthews v. Mound City Cab Co., Mo.App., 205 S.W.2d 243, 247. Respondent says that an arm signal was "the only other method by which a timely warning might have been given."

The difficulty with respondent's position is that she pleaded negligence in stopping the bus suddenly "without warning" and then proved that a warning was given and that she attempted to act upon it. Clearly, she did not prove her allegation that the bus stopped without giving any warning. Schroeder v. Rawlings, 344 Mo. 630, 127 S.W.2d 678, 683. She did not prove facts to bring her case within the ordinance requiring an arm signal of an intention to slacken speed or stop, nor did she plead negligence in failing to give a reasonable, timely and adequate warning of intention to slacken speed and stop, but assuming that her allegation was sufficient, the record wholly fails to show that any evidence of failure to give a warning, or a reasonable, adequate and timely warning was either offered by plaintiff or excluded by the court. No offer of any such evidence, if available, was made. No such evidence was excluded. Absent knowledge of what plaintiff's answer to the question would have been, the court could not say that error was committed in sustaining the objection to the mentioned question. Quinn v. Van Raalte, 276 Mo. 71, 205 S.W. 59, 65(1); Edwards v. Yarbrough, Mo.App., 201 S.W. 972, 974(7); Clader v. City of Neosho, Mo.App.,

198 S.W.2d 523, 529(5); E. F. Drew & Co. v. Brooks Supply Co., Mo.App., 243 S.W.2d 621, 623(2). The motion for a new trial, as to these points, was sustained on the theory that competent evidence was erroneously excluded, but, as stated, the record does not sustain that position. The trial court had no discretion to grant a new trial on the basis of assignments Nos. 7 and 8 of the motion for a new trial because the record fails to disclose any error with reference thereto. Gray v. St. Louis-S. F. Ry. Co., 363 Mo. 864, 254 S.W. 2d 577, 580(3).

■ The third ground upon which the motion for a new trial was sustained (Section 12) was that "the court erred in sustaining defendant's objection to argument by counsel for plaintiff since defendant's objection, given in the hearing of the jury, was that an instruction upon which the argument was based did not properly set forth the law of the State of Missouri." In sustaining this assignment in the motion, the trial court said "The Court overruled and then sustained defendant's objection to the argument of plaintiff's counsel that the bus operator was negligent in coming to an abrupt stop *without looking to see what was behind him.* Upon reflection, the Court believes the ruling sustaining this objection was error. Section 304.560, Paragraph 4, RSMo 1949, V.A.M.S. provides that a motor vehicle shall be equipped with a rear view mirror when the operator cannot see the road behind him by looking back or around the side of the vehicle. A reasonable construction of this statute would seem to be that a bus should be equipped with a rear view mirror, and that the bus operator should use this mirror when coming to a sudden stop." (Italics ours).

The record shows that plaintiff's counsel was arguing to the jury that the bus operator brought "the bus to a sudden stop, abrupt stop; *never looks and sees what is in back of him.*" (Italics ours). An objection was made and overruled as to the italicized statement and then counsel proceeded to say "The court tells you in this instruction, and I ask that you read it, one of the things that you must find here if you find for the plaintiff, that the bus— that the operator of said bus knew or in the highest degree of care on his part could have known of the presence of the automobile being operated eastwardly and to his rear. And then he says no requirement * * *." On a further objection that the instruction didn't say "look", the court ruled, "the objection is sustained, I don't think that is a proper construction." No objection to the argument of plaintiff's counsel was made or sustained upon the ground "that an instruction upon which the argument (of plaintiff's counsel) was based did not properly set forth the law of the state of Missouri." We find no basis in the record for sustaining plaintiff's motion for a new trial on the ground assigned in Section 12 of the motion for a new trial. Further, the evidence fails to show whether or not the operator of the bus looked behind him before making the sudden stop. The cause was not submitted upon negligence "in coming to an abrupt stop without looking behind him," or upon failure of defendant to equip the bus with a rear view mirror, nor was a construction of that statute involved.

■ The fourth ground assigned for granting the new trial (Section 20 of the motion) is as follows: "The Court erred in giving and reading to the jury over the objection and exception of plaintiff instruction No. 5 which directed a verdict for defendant because that instruction did not correctly set forth the law. That instruction authorized the jury to find that defendant was not negligent if they found that defendant's driver stopped the motorbus mentioned in evidence in response to a call from a prospective passenger and that in so stopping the driver did so as near the right curb as was practicable under the circumstances. This instruction ignored the law in the State of Missouri to the effect that defendant could not use as a defense the fact, if so, that defendant attempted to extricate itself from an emergency using the required degree of care if the emergency had been created by the defendant's negligence. This instruc-

tion was also in conflict with Instructions 1 and 2, and authorized the jury to find defendant guilty of no negligence even though the jury might find that the driver of said bus overlooked his prospective passengers until almost past the loading zone and, thereafter, *brought said bus to a sudden stop without adequate warning* in a portion of the street reserved for moving traffic." (Italics ours).

As to the third and fourth grounds assigned by the trial court for granting a new trial, the respondent's brief only states that she "does not waive" these grounds, especially as to Instruction 5, "because it directed a verdict for appellant upon a finding of fact inconsistent with appellant's evidence and theory." The complaint mentioned in the brief is not mentioned in the motion, however, we do not find the instruction objectionable on any of the grounds stated.

Instruction 5, directing a verdict for defendant, was based upon defendant's evidence and was in accordance with defendant's trial theory as shown by its evidence that its driver drove the bus out of the traffic lane as far as he could; that he applied his brakes approximately 80 feet before he came to a slow stop; that the rear of the bus was equipped with two 6-inch in diameter mechanical stoplights in operating condition, which came on when two pounds of air was applied to the brakes, and even before the brakes' shoes touched the drums; that 20 to 25 pounds of air pressure was required for a normal stop; and that the collision happened after the bus had stopped and after the operator had opened both doors and the prospective passengers, who were "walking to the doors, had almost got to the bus." The instruction required a finding "that at the time and place mentioned in the evidence defendant's driver stopped the motorbus mentioned in the evidence in response to a call from a prospective passenger, Charles Iselin, 'and * * * that in so stopping said motorbus the driver stopped said motorbus as near to the right curb of Gravois Avenue as was practicable under the circumstances, * * *." The instruction further required a finding "that in so stopping said motorbus the driver was exercising the highest degree of care at all times and was not guilty of negligence, * * *."

In his memorandum filed and made a part of the record, the trial court in sustaining plaintiff's motion for a new trial on this ground said the instruction "does not require a finding either that the stop was not sudden or that the bus operator gave adequate warning of his intention to stop"; and that "one of these findings was essential" and hence the instruction was "incomplete."

We think the instruction adequately required a finding of no negligence in stopping the bus. As stated above, there was no pleading and no proof and no offer of proof that the bus was stopped without the giving of a timely and adequate warning and no affirmative finding to the contrary on that issue was required. No issue of warning was submitted by plaintiff's instructions. The instruction adequately submitted the converse of the issues submitted by plaintiff.

The instruction was not inconsistent with defendant-appellant's theory at the trial. On defendant's evidence the stop was not a sudden one, the operator did not overlook his prospective passengers, the stop was not "without adequate warning", nor was it one in violation of the ordinance on which the cause was submitted by plaintiff. The instruction was not inconsistent with plaintiff's instructions 1 and 2. No other errors assigned in the motion for a new trial are urged in support of the trial court's order.

In view of the conclusions we have reached, it will not be necessary to consider appellant's contentions to the effect that plaintiff was guilty of contributory negligence as a matter of law; that she was not entitled to recover in any event; and that errors, if any, in the trial of the cause are immaterial.

182

The order granting a new trial to plaintiff is set aside and the cause is remanded to the trial court with directions to reinstate the verdict for defendant and enter judgment thereon.

All concur.