Edward V. EICKMANN, Appellant,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Respondent.

No. 46720.

Supreme Court of Missouri,

Division No. 2.

April 13, 1959.

Rehearing Denied May 11, 1959.

804

Sherman Landau, St. Louis, for appellant.

L. F. Stephens, St. Louis, for respondent.

STORCKMAN, Presiding Judge.

The plaintiff, Edward V. Eickmann, sued the defendant, St. Louis Public Service Company, a corporation, for damages in the sum of $35,000 resulting from injuries alleged to have been received by his wife while a passenger on a motorbus of the defendant. The verdict and judgment was in favor of the defendant and the plaintiff has appealed. The parties will be referred to as they were designated in the trial court.

The action was pleaded and submitted on the res ipsa loquitur doctrine. The plaintiff's evidence tended to show that Mrs. Eickmann was riding as a passenger on a west-bound Gravois bus in St. Louis on November 7, 1950; a freezing mist and rain had rendered the streets slippery. The motorbus upon which she was riding struck the rear of another bus of the defendant which was stopped at the Michigan street intersection; the force of the collision was sufficient to propel the standing bus a distance of 20 to 30 feet. Mrs. Eickmann testified she was thrown against and over the seat in front of her and injured; however, she was able to alight from the bus, take passage on a next bus to come along and to proceed to her home. Thereafter she received medical treatment. She filed suit for her own injuries, the trial of which was reviewed in this court. 363 Mo. 651, 253 S.W.2d 122. The husband's suit was filed June 22, 1955, and was tried in the Circuit Court of the City of St. Louis, beginning on October 2, 1957. Such other evidence as may be necessary will be referred to in the course of the opinion.

Plaintiff's first contention is that the trial court erred in refusing to give to the jury Instruction E which would have directed a verdict for the plaintiff on the issue of negligence. This instruction, offered by the plaintiff, is as follows:

"The court instructs the jury that the defendant, St. Louis Public Service Company, was guilty of negligence as a matter of law in so operating its buses as to cause and permit them to collide on the occasion shown in evidence, and if you find that Mrs. Maybelle Eickmann was injured by said collision, and that plaintiff sustained damage as a direct result thereof, then your verdict will be in favor of the plaintiff, Edward V. Eickmann, and against the defendant St. Louis Public Service Company, a corporation."

No evidence was offered by the defendant to refute plaintiff's evidence that the bus on which she was riding collided with the rear of the other motorbus. In fact there was at least an implied acceptance by the defendant of the fact of a collision although there was some effort to minimize its violence. However, there was testimony in plaintiff's case that at the time of the accident the street was slippery due to moisture and freezing.

In support of his plea that a finding of negligence should have been directed, plaintiff cites Prosser on Torts, p. 212, Ch. 7, § 43, and George Foltis, Inc., v. City of New York, 287 N.Y. 108, 38 N.E.2d 455, 462[19], 153 A.L.R. 1122. Both of these authorities recognize the general rule to be that res ipsa loquitur is a form of circumstantial evidence, creating an inference of negligence which ordinarily the jury will be permitted but not compelled to accept. While each recognizes there may be exceptional cases, neither furnishes authority for the direction of a finding of negligence in the circumstances of this case. The failure of the defendant to call witnesses to rebut plaintiff's prima facie case permits the drawing of an unfavorable inference but does not go the length of taking the issue of negligence from the jury. Res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference, and the issue is for the jury even though the defendant has offered no evidence to explain or rebut plaintiff's prima facie case. Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13, 17 [4]; Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95, 102[9]; Conser v. At-

chison, T. & S. F. Ry. Co., Mo., 266 S.W. 2d 587, 590[7]; Lerner v. Yeghishian, Mo.App. 271 S.W.2d 588, 592[9]. The court did not err in refusing Instruction E.

Plaintiff's second contention relates to the admission of evidence of prior accidents involving Mrs. Eickmann. On direct examination Mrs. Eickmann testified she was thrown over the seat in front of her and "I hurt practically my whole body, mostly on the left side"; that her neck, back, legs, knees, thighs, the left side of her stomach, and left breast were injured; that her hearing was impaired, and her left leg was shorter than the other; that she suffered from headaches, was very nervous, was cross and irritable, and in constant pain. On cross-examination she testified she struck her head, causing a swelling, but was not rendered unconscious, and that arthritis had developed. She further testified without objection on at least three occasions during cross-examination that she had complained that her "whole body" was hurt.

Thereafter defendant asked her if portions of her body were injured in accidents on at least three other occasions before November 7, 1950, to which question objection was made on the ground that the defendant did not intend "to demonstrate that any of the injuries from which Mrs. Eickmann now suffers had their origin in any previous accidents." On being assured that it did intend to do so, the court permitted the interrogation to continue. The examination developed that she made claim in 1948 against the St. Louis Public Service Company for an injury to her left arm as a result of an accident. When asked about a claim against the same company in 1943, she testified her wrist was injured but said she "didn't remember the dates." She admitted that she filed suit in 1940 against a man named Russell W. Murphy for injuries, but testified that she received no injuries although the family automobile was badly damaged. Defendant's offer in evidence of the Circuit Court filed in the Murphy case was rejected.

Plaintiff's medical evidence tended to show that Mrs. Eickmann was afflicted with arthritis of traumatic origin, spondylitis of the lumbar and thoracic spine, scoliosis, arteriosclerosis, and a shortening of the left leg. Dr. Charles Kromer, plaintiff's principal medical witness, first treated her on March 3, 1956, and had her hospitalized on March 25, 1957, and again on April 11, 1957. He testified that he thought a "major part of her present condition, symptoms and complaints, are due to her injury in 1950," although he stated the "finding and diagnosis of arteriosclerosis I think is entirely unrelated to her so-called accident." This medical evidence did not serve to remove from the case Mrs. Eickmann's testimony that practically her whole body was injured in the 1950 accident, although the injuries were mostly on the left side. Plaintiff pleaded an injury to Mrs. Eickmann's left arm and her testimony, although indefinite in many respects, tended to support this allegation.

■ In a personal injury action the health and physical condition of the injured person prior and subsequent to the accident is material and any competent evidence tending to prove or disprove the nature and extent of the injuries alleged to have been received is admissible. Henderson v. Dolas, Mo., 217 S.W.2d 554, 560[12]; Eickmann v. St. Louis Public Service Company, 363 Mo. 651, 253 S.W.2d 122, 125[2]; 25 C.J. S. Damages § 147, p. 796.

The plaintiff has cited cases in which the defendant undertook to prove that the plaintiff was a habitual claimant, which cases are not applicable to the present situation. Here the defendant undertook to show that the injuries claimed in the previous accidents were to the same or similar parts of the body claimed to have been injured in the 1950 accident. The 1948 and 1943 injuries were sufficiently related to the present claim to permit their consideration by the jury. Mrs. Eickmann denied that she received any injuries in the 1940 acci-

dent and the court excluded the defendant's offer of the files of her case based thereon.

Plaintiff further says that the defendant did not prove that the prior injuries were still in existence at the time of the 1950 injury. However, the prior injuries were not so remote as to preclude their continued existence especially in view of the nature of the injuries presently claimed. The defendant is aided by the presumption that a physicial or mental condition shown to exist at one time continues until a change is shown. Canty v. Halpin, 294 Mo. 118, 242 S.W. 97, 102[6]; Powell v. Travelers' Protective Association, 160 Mo.App. 571, 140 S.W. 939, 943[5]; 31 C.J.S. Evidence § 124 b, p. 739.

The evidence of prior injuries was brought out largely on cross-examination of plaintiff's witnesses and particularly Mrs. Eickmann. The law is well settled that the extent and scope of cross-examination in a civil action is discretionary with the trial court and its rulings in regard thereto will not be disturbed unless an abuse of discretion is clearly shown. Fisher v. Gunn, Mo., 270 S.W.2d 869, 876[6]; Lonnecker v. Borris, Mo., 245 S.W.2d 53, 56[5].

The trial court adequately safeguarded the rights of the plaintiff and did not abuse its discretion with respect to the scope of the cross-examination or the use made of the evidence of prior injuries.

Plaintiff's counsel sought and obtained permission to inquire whether any member of the jury panel had an interest in or connection with the Transit Casualty Company. He was denied permission however to inquire whether any prospective juror owned stock in National City Lines, which he offered to show owned a substantial part of the capital stock of the defendant St. Louis Public Service Company. The plaintiff contends the court erred in refusing to permit this inquiry. A person is not a competent juror who is not in a position to enter the jury box with an open mind free from bias and prejudice with respect to any party litigant and to decide the case upon the evidence adduced and the law as given in the court's instruction, and the fact that the statutes enumerate certain grounds of disqualification does not exclude other grounds. Section 494.190 RSMo 1949, V.A.M.S., Barb v. Farmers Insurance Exchange, Mo., 281 S.W.2d 297, 301[1]. However, the trial judge is and should be vested with broad discretion in determining the qualifications of veniremen to sit as jurors and his ruling should not be disturbed unless they are clearly and manifestly against the evidence. Strahl v. Turner, Mo., 310 S.W.2d 833, 841[12]. Obviously the proper qualification of jurors is not served by unlimited inquiries into the stock ownership of affiliated or holding companies. The trial court must necessarily be vested with discretion as to when the inquiry is too remote or otherwise improper. The plaintiff has not demonstrated that he was prejudiced by the ruling and we are constrained to hold that the trial court did not abuse his discretion in limiting the inquiry.

The plaintiff next contends that the court erred in permitting defendant's counsel to comment unfavorably on plaintiff's failure to produce certain medical witnesses. The two doctors who testified for the plaintiff in the present trial had not treated Mrs. Eickmann prior to 1955 and, therefore, had not testified in the wife's case which was tried in May 1951. Four doctors had treated her previously, three of whom testified in the trial of her case. Dr. Arthur W. Stein, who treated Mrs. Eickmann the evening of the day upon which the accident occurred, did not testify at either of the trials. Dr. Stein was served with a subpoena in the present case and there was a showing that the reason that he did not appear at the trial was because he had suffered a broken hand. There was also testimony that he was aged and infirm. Of the doctors who testified in 1951, Dr. F. G. Pernoud died on June 9, 1952;

Dr. D. T. Miller moved to the State of Indiana in 1953; and Dr. James F. Mc-Fadden had accepted a position on the staff of the Missouri State Hospital at Farmington, where he resided at the time of the trial.

In his argument to the jury counsel for the defendant commented upon the failure of plaintiff to produce Dr. Miller or take his deposition. The plaintiff's objection was: "If the Court please, that witness is out of the state, he is unavailable, and the comment is improper for that reason." The objection was overruled. Defendant's counsel then commented upon the failure to bring Dr. McFadden from Farmington and the plaintiff made this objection: "Object to that, he likewise is out of the jurisdiction of this Court." The court stated that since Dr. McFadden was in Farmington he was in subpoena range and the defendant's counsel was permitted to continue his argument.

Defendant argued that plaintiff's failure to produce Dr. Stein as a witness in person or by deposition permitted the jury to infer that Dr. Stein would have testified that nothing was wrong with plaintiff's wife. Plaintiff's objection on the ground that the statement was incredible was overruled. The plaintiff then argued that if Dr. Stein had been used as a witness in the first trial his testimony could have been read in evidence in this case and plaintiff's objection was sustained on the ground there was no evidence whether Dr. Stein had testified and the court directed that "any reference to Dr. Stein and the other trial should be omitted."

 While the plaintiff contends that Dr. Miller and Dr. McFadden were unavailable to either party by reason of their residence—one being out of the city and the other being out of the state—we need to consider only his contention that both of these witnesses were equally available to each of the parties because both doctors had testified in Mrs. Eickmann's case in 1951, and their testimony was preserved in

the transcript of the record on appeal. The plaintiff relies upon Bartlett v. Kansas City Public Service Co., 349 Mo. 13, 160 S.W.2d 740, 745[9], 142 A.L.R. 666, holding that the testimony of two witnesses given at the trial of the husband's case for loss of services was properly admitted in evidence in the wife's action for her injuries where it was shown that the witnesses were permanently domiciled in another state at the time of the second trial. It is true that competent testimony of a witness preserved in a transcript of the record in a cause may be used in the same manner and with like effect as if such testimony had been preserved in a deposition in the cause. § 492.410; Sculley v. Rolwing, Mo.App., 88 S.W.2d 394, and Scully v. Rolwing, Mo. App., 115 S.W.2d 96; Welp v. Bogy, 218 Mo.App. 414, 277 S.W. 600.

It was held in Trzecki v. St. Louis Public Service Co., Mo., 258 S.W.2d 676, 678, that the waiver by plaintiff of the patient-physician privilege does not make the plaintiff's physician "equally available" as a witness for the defendant in the sense that the basis for drawing an unfavorable inference because of plaintiff's failure to call his physician is thereby destroyed. The Trzecki opinion further states that the term "available" means more than being available or accessible for the service of compulsory process or subpoena; that it includes such matters as a party's superior knowledge of the existence and identity of the witnesses, the nature of the testimony that the witnesses might be expected to give about the facts of the case and the relationship borne by the witnesses to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify more favorably to one party than the other.

 The relationship of these medical witnesses to the plaintiff and his wife was not changed by the fact that their testimony at the previous trial was preserved in the

transcript of the record. It must be assumed that their personal interest was in their patient and that their testimony in the previous case was more favorable to Mrs. Eickmann than to the defendant. Trzecki v. St. Louis Public Service Co., supra. If the depositions of these doctors had been taken by the plaintiff and filed in the case but not introduced in evidence, would the defendant have been deprived of his right to comment on plaintiff's failure to call the witnesses on the theory that the defendant had access to their depositional testimony and the witnesses were, therefore, equally available to the defendant? We do not think so. As a general rule the introduction of a deposition or a part thereof by a party for any purpose other than contradiction or impeachment makes the deponent the witness of the party introducing the deposition. Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469, 473[8]. Under the statute, § 492.-410, the transcript of the record had the same standing as a deposition. The defendant was not required to use the transcript thereby vouching for the credibility of the witnesses and forfeiting its right to adverse comment. The claim of error is denied.

■ The plaintiff next contends the court erred "in admitting testimony" by Dr. Sutter "relating to the alleged statements by plaintiff's wife." When Dr. Richard Sutter, who examined Mrs. Eickmann in May 1951, pursuant to court order, and who testified on behalf of the defendant, started to relate the case history given him by Mrs. Eickmann, the plaintiff objected stating that the history contained "references to many matters which are not properly subjects of a physical examination." The court ruled that the "questions ought to be limited to the complaints she made, and history he obtained which in his judgment was necessary for the examination." The interrogation of the witness continued and the doctor testified, inter alia, that Mrs. Eickmann told him that at the time of the collision she

was jostled about but not thrown to the floor; that she did not lose her purse but managed to keep it on her lap where she was carrying it. There was no further objection to this or other items of the case history. Arguments in the brief going to the credibility of the evidence and the good faith of the parties were for the jury and need not be further noticed. The only authorities discussed by the plaintiff under this point are in his reply brief and seem intended to support a contention that Mrs. Eickmann's statements were involuntary because they were made in the course of an examination ordered by the court. This and other contentions made in this regard are without merit. The court did not err in admitting this testimony of Dr. Sutter.

Plaintiff's next contention is: "The court erred in permitting defendant's counsel to draw an unfavorable inference from plaintiff's exercise of his legal right in filing this action within the time provided by the laws of Missouri." The husband's action was not filed until June 22, 1955, and defendant's counsel was permitted to argue to the jury that the delay in filing the suit worked to the disadvantage of the defendant; that Mrs. Eickmann did not have medical treatment from the time her case was tried in May, 1951, until her husband's case was filed; and that the purpose of the suit was to recover money to which the husband was not entitled because his wife was not injured in the accident. The jury was instructed that its verdict should be in favor of the defendant unless it found that Mrs. Eickmann was injured at the time and place in question; that was the principal issue in the case. It appears from the record that there was a period of four years during which Mrs. Eickmann did not receive medical attention; that is, from May, 1951, to June, 1955. Treatment was resumed about the time her husband's suit was filed. The cases cited by plaintiff, holding that a witness cannot be discredited for having exercised or taken advantage of a legal right such as going through bankruptcy or by the filing of a suit in a state

other than the plaintiff's residence, are beside the point. The time of filing the suit together with the related facts and circumstances in evidence tended to throw some light upon the question of Mrs. Eickmann's injuries.

 Counsel is allowed wide latitute in discussing the facts and arguing inferences from the evidence even though the inferences drawn are illogical or erroneous. Meierotto v. Thompson, 356 Mo. 32, 201 S.W.2d 161, 167[10]; Raymore v. Kansas City Public Service Co., Mo.App., 141 S.W.2d 103, 109[11]; Stewart v. George B. Peck Co., 234 Mo.App. 864, 135 S.W.2d 405, 412[9]. The trial court must necessarily be vested with a wide discretion in ruling on the propriety of jury arguments and in determining whether prejudice has resulted; the exercise of such discretion will not be disturbed unless it is clearly abused. Griffith v. Gardner, 358 Mo. 859, 217 S.W.2d 519, 530[18]. We find no error in the court's ruling.

 The defendant introduced in evidence several reels of motion pictures identified by Norman Atkins, a private investigator, as having been taken by him of plaintiff's wife. On cross-examination Atkins, on being asked if he had been paid for taking the pictures, stated that he was on a monthly salary. Plaintiff's counsel then asked who paid him and the court interjected: "Wait a minute. Why is that material?" Plaintiff's counsel did not respond to the court's question but instead undertook to ask a further question with respect to payment; the question was interrupted by an objection by the defendant which was sustained. The cross-examination was then concluded. No offer of proof was made by the plaintiff. "Before there is anything to review on appeal on exclusion of evidence, 'a proper question must be asked, and, on objection thereto,

an offer must be made at the time showing what evidence will be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all facts necessary to establish its admissibility.'" Byam v. Kansas City Public Service Co., 328 Mo. 813, 41 S.W.2d 945, 952[15]. See also Pitha v. St. Louis Public Service Co., Mo., 273 S.W.2d 176, 179[3]; City of Kirkwood v. Cronin, 259 Mo. 207, 168 S.W. 674, 676[3]; 4 C.J.S. Appeal and Error § 291 b(1) aa, p. 895. The plaintiff did not accept the court's invitation to disclose the materiality of the inquiry. What an answer would have disclosed is left entirely to speculation. In this situation there was nothing for the trial court to rule on and there is nothing for us to review.

Lastly the plaintiff contends that he was prejudiced by the misconduct of defendant's counsel in "persistently defying the rulings of the trial court, and in perverting the testimony of witnesses." The misconduct complained of consisted principally of interrupting a witness' answer with another question and the alleged misstatement of evidence. The defendant's response is that it is the one sinned against and that plaintiff should be taxed with the cost of parts of the record claimed to be unnecessary.

We need not prolong this opinion with a recitation of the various cross-accusations. It is sufficient to say that the record discloses that the trial court was responsive to the objections of counsel and frequently intervened to enable witnesses to complete their answers and to restrain counsel when they became overzealous. We find no disregard of the court's rulings that may be attributed to wilfulness. We are not persuaded that reversible error was committed.

Accordingly the judgment is affirmed.

All concur.